ORDERED.

Dated:  March 29, 2019

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          Case No. 8:16-bk-06552-MGW
                                                                Chapter 11
ICMFG & Associates, Inc.,

     Debtor.
_____/

ICMFG & Associates, Inc.                                        Adv. Pro. No. 17-ap-00299

     Plaintiff,
v.

The Bare Board Group, Inc.,

     Defendant/Counter-Plaintiff,
v.

ICMFG & Associates, Inc., et al.,

     Plaintiffs/ Counter-Defendants.
_____/

**MEMORANDUM OPINION AND
ORDER DENYING THE BARE BOARD GROUP, INC.'S
REQUEST FOR AN ADVERSE INFERENCE**[1]

---

[1] Adv. Doc. No. 114.

In August 2011, Mike Doyle's hard drive crashed. To recover the hard drive's data, Doyle was told he would have to send it to an outside source, which would cost $2,000. Not wanting to spend the money, Doyle threw the hard drive out. Eight months later, Doyle (and others) were sued by The Bare Board Group, Inc. At trial, Bare Board, which had a shaky lost profits claim against Doyle and the other Defendants, asked the Court to draw an adverse inference that the information on Doyle's hard drive would establish that the Defendants caused its lost profits. Because Bare Board is unable to establish that Doyle (or the other Defendants) had a duty to preserve the hard drive or that Doyle acted in bad faith when he threw the hard drive out, the Court will deny Bare Board's request for an adverse inference.

## Background

Bare Board is a printed circuit board (PCB) distributor. Tom Coghlan and Bonnie del Grosso were former Bare Board directors. In 2009, while Coghlan and del Grosso were serving as Bare Board directors, Mike Doyle approached Coghlan about setting up a competing PCB distributor: ICMfg & Associates. Coghlan and del Grosso, along with another Bare Board employee, invested $100,000 to fund ICMfg & Associates' start up.

Then, from 2009 to January 2012, Coghlan and del Grosso helped Doyle operate ICMfg & Associates. Among other things, Coghlan and del Grosso opened the company's bank account, bought furniture and computers, and hired an accountant. Del Grosso also served as ICMfg & Associates' bookkeeper, handled

accounts receivable and payable, and communicated with customers, suppliers, and sales representatives, while Coghlan helped with sales. All the while, Coghlan and del Grosso remained Bare Board directors.

In January 2012, Coghlan and del Grosso resigned and went to work full time for ICMfg & Associates. Not long after, Bare Board discovered that Coghlan and del Grosso had helped Doyle set up and operate ICMfg & Associates while serving as Bare Board directors. In April 2012, Bare Board sued Coghlan and del Grosso for breach of fiduciary duty and fraud; ICMfg & Associates and Doyle for aiding and abetting Coghlan and del Grosso's breach of fiduciary duty; and all of them for civil conspiracy for violation of Florida's Deceptive and Unfair Trade Practices Act.

To make a long story short, liability was established by default, and this Court tried Bare Board's lost profits claim. According to Bare Board, Coghlan and del Grosso diverted forty-two customers to ICMfg & Associates. In all, ICMfg & Associates did more than $25 million in sales with those customers, which, had Bare Board made those sales, would have resulted in roughly $3.1 million in profits. After a four-day trial, this Court denied Bare Board's lost profits claim.

Under Florida law, Bare Board was required to prove to a reasonable degree of certainty that the wrongful conduct here caused its lost profits. To meet that burden, Bare Board was required to first satisfy the "mind of a prudent impartial person" that its lost profits were "not the result of speculation or conjecture." If Bare Board could make that showing, then it was required to prove there was a "reasonable yardstick" for determining the amount of lost profits. The Court

3

ultimately concluded that Bare Board's lost profits were speculative or conjectural and that, even if they weren't, Bare Board failed to prove a "reasonable yardstick" for measuring damages. At trial, however, Bare Board requested that the Court draw an adverse inference that there was additional evidence supporting a causal link between the wrongful conduct here and Bare Board's lost profits.

As it turns out, eight months before Bare Board asserted its claims against the Defendants, Mike Doyle threw out an external hard drive containing e-mails among Doyle, Coghlan, and del Grosso relating to ICMfg & Associates. Doyle's external hard drive apparently crashed in August 2011. So he took it to ICMfg & Associate's IT person. But the IT person said he couldn't repair the drive. In order to recover the data, Doyle was told he'd have to send the drive to an outside service, which would likely cost $2,000. Believing $2,000 was too much to recover the data, Doyle threw the hard drive in the trash. The Court now writes to explain why, in denying Bare Board's lost profits claim and a later motion for reconsideration of that ruling, it declined to draw an adverse inference in favor of Bare Board on causation.

## Conclusions of Law

Because imposing sanctions for spoliation of evidence is an evidentiary matter, federal law governs.[2] Under federal law, spoliation sanctions are available only when the party who destroyed evidence had a duty to preserve it; the party destroyed the evidence "with a culpable state of mind;" and a reasonable trier of fact could find

---

[2] *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

that the evidence that was destroyed would support a claim or defense in the case.[3]

Here, Bare Board fails to establish two of the three required elements for spoliation

sanctions.

*The Defendants did not have a duty to preserve the hard drive*

Before litigation is pending, a duty to preserve evidence—absent a contractual

or statutory obligation or a preservation notice—arises only if litigation is reasonably

foreseeable.[4] For litigation to be reasonably foreseeable, it must have been

contemplated."[5] Mere awareness of potential liability, however, is insufficient to

trigger a duty to preserve evidence.[6]

Yet, that's all Bare Board can point to here. According to Bare Board, the

Defendants were aware, or should have been aware, that secretly forming ICMfg &

Associates and diverting customers from Bare Board to ICMfg & Associates would

result in litigation. In other words, the Defendants were or should have been aware

of potential liability. Courts, however, have rejected a duty to preserve in cases

---

[3] *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *3 (M.D. Fla. Mar. 12, 2015).

[4] *Jetport, Inc. v. Landmark Aviation Miami, LLC*, 2017 WL 7732869, at *3 (S.D. Fla. July 24, 2017) ("The Eleventh Circuit has made clear that a duty to preserve evidence only 'arises once litigation is pending or reasonably foreseeable.'") (quoting *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009)); *Elec. Mach. Enters., Inc. v. Hunt Constr. Grp., Inc. (In re Elec. Mach. Enters., Inc.)*, 416 B.R. 801, 874 – 75 (Bankr. M.D. Fla. 2009).

[5] *Jetport*, 2017 WL 7732869, at *3 (quoting *Kraft Reins. Ireland, Ltd. v. Pallets Acquisitions, LLC*, 845 F. Supp. 2d 1342, 1358 (N.D. Ga. 2011)).

[6] *Id.*

involving a mere awareness of potential liability arising from wrongful conduct time and again.[7]

For example, the Southern District of Florida's recent decision in *Jetport, Inc. v. Landmark Aviation Miami, LLC* is instructive.[8] There, a jet owned by Jetport collided with a Southwest Airlines jet parked at Landmark Aviation's fixed-based operation at Miami International Airport. The night of the crash, Landmark management reviewed surveillance video of the collision. That surveillance footage was automatically deleted thirty days later. After suing Landmark Aviation, Jetport discovered that the surveillance video had been deleted. So Jetport sought sanctions for spoliation, which the district court denied.[9]

Among other reasons, the district court concluded that Landmark Aviation had no duty to preserve the video.[10] In doing so, the court first rejected the argument that Landmark Aviation must have anticipated litigation because they had their employees prepare written statements the night of the collision.[11] More important to this case, the court explained that "while an argument *could* be made that litigation is

---

[7] *Winn-Dixie Stores, Inc. v. Dollar Tree Stores, Inc.*, 2012 WL 12877648, at *1 (S.D. Fla. Mar. 12, 2012) ("The existence of a potential civil action and/or duty to preserve evidence must be based on more than the mere possibility that something may occur at some time in the future."); *Calhoune v. Ford Motor Co.*, 2019 WL 341179, at *3 (S.D. Fla. Jan. 28, 2019) (quoting *Winn-Dixie*, 2012 WL 12877648, at *1).

[8] *Jetport*, 2017 WL 7732869, at *3.

[9] *Id.* at *2.

[10] *Id.* at *3 – 4.

[11] *Id.*

reasonably foreseeable any time two aircrafts collide with each other, 'that is clearly not always true, and the Court [was] unwilling to draw that inference under the specific circumstances of [that] case.'"[12]

A Florida state court decision—*Osmulski v. Oldsmar Fine Wine, Inc.*,—is likewise instructive.[13] In that case, a customer slipped and fell at a store owned by Oldsmar Fine Wine, shattering her wrist. During discovery, the customer requested copies of any surveillance video the store had. Oldsmar Fine Wine said it had none. In a later deposition, however, Oldsmar Fine Wine's principal acknowledged that the store had surveillance cameras that were operational that day and that would have recorded the incident. But he testified that the recordings were automatically deleted after sixty days. Although he was aware the customer had made a claim against the store's insurance, Oldsmar Fine Wine's owner never made a copy of the video recordings.

Shortly before trial, the customer moved for sanctions based on spoliation of evidence. The trial court denied the customer's motion. On appeal, the Second District Court of Appeal affirmed the denial of sanctions. Noting that no preservation demand had been made, the court held that Oldsmar Fine Wine had no duty to preserve the video recordings.[14]

---

[12] *Id.*

[13] 93 So. 3d 389 (Fla. 2d DCA 2012).

[14] *Id.* at 394.

That was the case even though Oldsmar Fine Wine was aware the customer had made a claim against the store's insurance carrier.[15] Because the claim only sought payment for medical expenses, however, the court reasoned Oldsmar Fine Wine wasn't on notice the customer may seek other damages.[16] The court also concluded that Oldsmar Fine Wine's involvement in an earlier slip-and-fall case, where the store's owner did review surveillance video, was not sufficient to impose a duty to preserve on Oldsmar Fine Wine.[17]

Like in *Jetport*, an argument could be made that litigation is foreseeable any time directors help set up and operate a competing company. Indeed, that is essentially Bare Board's argument. Bare Board cites *Cohn v. Guaranteed Rate, Inc.*, which stands for the proposition that a "duty to preserve arose when the plaintiff considered litigation and made overtures to her former employer's competitors."[18]

In some respects, *Cohn* is analogous to this case. The claims there are similar to those here in that an employer brought claims against a former employee for diverting business from the employer, although it was the former employee who filed suit first.[19] On that point, one procedural wrinkle here that the Court admittedly has

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] 318 F.R.D. 350, 354 (N.D. Ill. 2016).

[19] *Id.* at 352.

glossed over (mostly because it hasn't been relevant until now) is that it was actually ICMfg & Associates, Coghlan, and del Grosso that filed suit first, which is significant for spoliation purposes because the *Cohn* court observed that "[f]ederal courts across the country have recognized that a 'plaintiff's duty [to preserve] is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation.'"[20]

The suggestion, of course, is that because ICMfg & Associates, Coghlan, and del Grosso sued first, they controlled the timing of this litigation. And because they controlled the timing of the litigation, the argument would go, the litigation was reasonably foreseeable. That appears to be the *Cohn* court's logic.

It's not clear that the Eleventh Circuit or Florida law, which can inform federal courts considering spoliation sanctions, imposes a greater duty to preserve evidence on plaintiffs than defendants as a general rule. Bare Board doesn't cite any Eleventh Circuit or Florida case law on that point. In any event, the facts in *Cohn* are distinguishable from those here.

There, the notion that the litigation was foreseeable was supported by the record because the former employee had retained an attorney (the one who actually represented her in the lawsuit) and sent an e-mail saying that the lawsuit between herself and her former employer was going to be so much fun.[21] Here, on the other

---

[20] *Id.* at 354.

[21] *Id.* at 352.

hand, there was no evidence that Doyle or anyone else had retained an attorney or

threatened litigation by the time Doyle discarded the hard drive. For that reason,

*Cohn* doesn't support imposing a duty to preserve on Doyle where none otherwise

exists.

*Doyle did not destroy the hard drive in bad faith*

The Eleventh Circuit has made clear that an adverse inference may be drawn

only when a party's failure to preserve evidence was predicated on bad faith.[22] Mere

negligence is not enough.[23] Nor is gross negligence.[24] Even so, to prove bad faith,

Bare Board relies on a decision out of the Southern District of New York in

*Dorchester v. Financial Holdings Corp. v. Banco BRJ, S.A.*, where the court found that

destruction of a hard drive after a half-hearted attempt to fix it was grossly

negligent.[25]

In that case, Dorchester Financial sued BRJ for breach of contract and fraud

in 2002. The claims arose out of BRJ's alleged failure to honor a $250 million letter

---

[22] *Penalty Kick Mgmt, Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1294 (11th Cir. 2003) ("In this circuit 'an adverse inference is drawn from a party's failure to preserve evidence only when the absence of that evidence is predicated on bad faith.'") (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)).

[23] *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997).

[24] *Tesoriero v. Carnival Corp.*, 2017 WL 8895347, at *22 (S.D. Fla. Sep. 22, 2017) ("In fact, even gross negligence is insufficient to make a finding of bad faith."); *Wandner v. Am. Airlines*, 79 F. Supp. 3d 128, 198 (S.D. Fla. 2015) ("Given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, even grossly negligent discovery conduct does not justify that type of jury instruction."); *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *3 (M.D. Fla. Mar. 12, 2015) ("So, while Novatus' inaction may be characterized as negligence, or even gross negligence, it will not support the imposition of sanctions.").

[25] 304 F.R.D. 178, 183 (S.D.N.Y. 2014).

10

of credit. Dorchester Financial claimed the parties had executed a contract obligating BRJ to issue the letter of credit. For its part, BRJ contended that the letter of credit and the contract obligating BRJ to issue a letter of credit were counterfeit. After its complaint was dismissed, Dorchester Financial appealed.

While the case was on appeal, Dorchester Financial's attorney, T.J. Morrow, who had previously gathered all the client's documents and put them on his computer, printed out the electronic documents he thought would be helpful.[26] Several days later, his computer crashed. So Morrow sought help from his brother-in-law, who lacked any formal computer training.[27] Morrow's brother-in-law told Morrow the computer was "basically gone."[28] Relying on his brother-in-law's advice, Morrow destroyed the computer and did not mention the loss of documents until more than two years later, in response to a discovery request. In concluding that Morrow was grossly negligent destroying the computer, the district court noted that Morrow made no effort to consult with a computer specialist, instead relying on advice from his brother-in-law, who described himself as "not much of a computer person."[29]

---

[26] *Id.* at 181.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 183.

Putting aside that Florida federal courts have seemingly universally rejected the notion that gross negligence is enough,[30] this case is not like *Dorchester Financial*. For starters, *Dorchester Financial* involved the destruction of a computer while a lawsuit was pending, and only after Morrow printed off documents that were helpful to his client. Here, Doyle, as far as we know, didn't retrieve any records from the hard drive. Also, unlike Morrow, Doyle consulted with an IT person when his hard drive crashed. And Doyle threw out his hard drive only after the IT person, who presumably had some computer training, advised Doyle the data could only be recovered by an outside service, which would cost $2,000. For those reasons, Doyle was not grossly negligent under *Dorchester Financial*.

Several federal courts in this circuit have laid out a test for determining when evidence is destroyed in bad faith.[31] Those courts have concluded that bad faith can be proved circumstantially by showing that (1) the evidence that once existed was material to a party's claim or defenses; (2) the spoliating party affirmatively destroyed the evidence; (3) the spoliating party knew or should have known it had a

---

[30] *See, e.g., Tesoriero v. Carnival Corp.*, 2017 WL 8895347, at *22 (S.D. Fla. Sep. 22, 2017) ("In fact, even gross negligence is insufficient to make a finding of bad faith."); *Wandner v. Am. Airlines*, 79 F. Supp. 3d 128, 198 (S.D. Fla. 2015) ("Given this Circuit's requirement that an adverse inference flowing from spoliation requires the presence of bad faith, even grossly negligent discovery conduct does not justify that type of jury instruction."); *Selectica, Inc. v. Novatus, Inc.*, 2015 WL 1125051, at *3 (M.D. Fla. Mar. 12, 2015) ("So, while Novatus' inaction may be characterized as negligence, or even gross negligence, it will not support the imposition of sanctions.").

[31] *See, e.g., Calhoune v. Ford Motor Co.*, 2019 WL 341179, at *2 (S.D. Fla. Jan. 28, 2019); *Cerrato v. Nutribullet, LLC*, 2017 WL 5149206, at *2 (M.D. Fla. Nov. 6, 2017); *Wooden v. Barringer*, 2017 WL 5140518, at *4 n.3 (N.D. Fla. Nov. 6, 2017).

duty to preserve the evidence; and (4) the destruction of evidence cannot be credibly explained by something other than bad faith.[32] Here, those four factors weigh in favor of finding Doyle did not act in bad faith.

To be sure, Doyle affirmatively destroyed the hard drive. But the Court has already concluded that Doyle did not have a duty to preserve the hard drive. And Bare Board failed to elicit with any specificity what was on the drive. So it's impossible to know whether it would have supported Bare Board's claims. Most important, Doyle had a credible explanation for destroying the computer: he didn't want to pay the $2,000 it would likely cost to recover it. Based on those facts, the Court cannot conclude Doyle acted in bad faith.

## Conclusion

This Court has broad discretion when considering sanctions for spoliation.[33] Spoliation sanctions should be imposed to deter parties from destroying evidence. Here, if the Court accepts Bare Board's argument that the wrongful acts by Doyle and others by itself gives rise to a duty to preserve, then the exception to the general rule that no duty to preserve exists would swallow the rule, and a duty to preserve will exist in every case.

At bottom, the Court concludes that Bare Board has failed to prove that the litigation in this case was reasonably foreseeable, and even if it was, there was

---

[32] *Jetport, Inc. v. Landmark Aviation Miami LLC*, 2017 WL 7732869, at *5 – 6 (S.D. Fla. July 24, 2017) (citing *Walter v. Carnival Corp.*, 2010 WL 2927962 (S.D. Fla. 2010)).

[33] *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).

insufficient evidence to show that Doyle threw out his hard drive in bad faith.

Accordingly, it is

**ORDERED** that the Court denies Bare Board's request to draw an adverse

inference that the information on Doyle's hard drive would have proven that

wrongful conduct by Doyle and the others caused Bare Board's lost profits.

Attorney Susan H. Sharp is directed to serve a copy of this Memorandum Opinion
and Order on interested parties who are non-CM/ECF users and file a proof of
service within 3 days of entry of the Order.

**Susan H. Sharp, Esq.**
**Matthew B. Hale, Esq.**
  Stichter, Riedel, Blain & Postler
**Robert W. Hitchens, Esq.**
  Hitchens & Hitchens, P.A.
*Counsel for the Defendants*

**Charles M. Harris, Esq.**
**Kelly J. Ruoff, Esq.**
  Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A.
*Counsel for the Plaintiff*